# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| KOURTNEY SHELLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-380 (MTT) |
| | ) |
| WESLEYAN COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant Wesleyan College has moved to dismiss *pro se* Plaintiff Kourtney Shelley's complaint. Doc. 6. For the following reasons, the motion (Doc. 6) is **DENIED**.

## I. BACKGROUND

On November 27, 2017, the Plaintiff, who is African-American, began working for the Defendant as a Transfer Support Coordinator in the Strategic Enrollment Management Division, which consists of two departments—Admissions and Financial Aid. Doc. 1 ¶¶ 7-9. According to the Plaintiff, soon after beginning her employment, she "was faced with bullying, causing a hostile work environment, from a Caucasian female co-worker whose job title was Traditional Student Coordinator." *Id.* ¶ 14. Though the co-worker was tasked to train the Plaintiff, "she made it her mission to reduce [the Plaintiff's] worth to that of a slave." *Id.* ¶ 15. For example, the co-worker allegedly threw a box on the floor in front of the Plaintiff and told the Plaintiff to "take this

to the conference room," even though the co-worker was closer to the room. *Id.* ¶ 16. The following are other examples of what the Plaintiff alleges amount to bullying:

- the co-worker placed notes on the Plaintiff's desk, telling the Plaintiff to take certain things to the Registrar's Office;
- the co-worker double-booked appointments for the Plaintiff to meet with various employees and then reported that the Plaintiff was late and questioned her whereabouts;
- the co-worker sent the Plaintiff "across campus to make deliveries" and then questioned her whereabouts;
- the co-worker accused the Plaintiff of "belittling Wesleyan College" by trying to enforce practices of other colleges at which the Plaintiff had worked; and
- the co-worker assigned tasks that the Plaintiff could not perform and blamed her for lack of productivity.

*Id.* ¶¶ 17, 23-27.

The alleged bullying only "escalated" once the co-worker learned that the Plaintiff had requested a meeting with her Caucasian male supervisor to inform him that her co-worker assigned her a supposedly unethical task—not converting grade point averages for students transferring from a two-year college in Middle Georgia. *Id.* ¶¶ 19-20, 22. Two weeks into her employment, the Plaintiff finally met with her supervisor. *Id.* ¶ 28. At the meeting, the supervisor told the Plaintiff that he did not believe this practice of not converting grade point averages was unethical and, presumably addressing her

concern about the bullying, advised the Plaintiff to report to him, not her co-worker.[1]  *Id.*
¶¶ 20-21, 28.

But that did not stop the alleged bullying.  According to the Plaintiff, "[i]t became a team effort," such that the supervisor stopped speaking to the Plaintiff, and when the Plaintiff saw the supervisor in the co-worker's office, the two ended their conversation when she came near.  *Id.* ¶ 29.  During an Admissions' Advisory Council Meeting, the Plaintiff recalls the supervisor telling people that the Plaintiff was "close acquaintances with the only other African-American employee in the room," even though that comment was neither requested nor necessary.  *Id.* ¶ 31.  The Plaintiff also alleges she overheard the supervisor tell someone that the "black students at Wesleyan were resentful of the White and Asian students because they had more financial means.  Wesleyan College should only accept students with high ability and low need."  *Id.* ¶ 32.  Upon hearing this, the Plaintiff believed there was "no one to protect [her]."  *Id.*

Finally, the Plaintiff alleges that another caucasian female co-worker "was recruited to join the bullying, teaming up with the initial Caucasian female co-worker to create a myriad of mendacious falsehoods regarding [the Plaintiff]."  *Id.* ¶ 33.  These co-workers allegedly misquoted and misrepresented words that the Plaintiff had actually said.  *Id.*  Though the Plaintiff requested another meeting with her supervisor to address and resolve the bullying, the meeting never occurred.  *Id.* ¶ 34.  Rather, on January 8, 2018, less than six weeks into her employment, the Plaintiff was discharged.  *Id.* ¶ 12. The supervisor and Human Resource Director allegedly gave the following reason: "You

---

[1] The Plaintiff does not allege that reporting the "unethical" practice resulted in her termination.

are just not a good fit." *Id.* ¶ 34. The Plaintiff then received a letter stating that the Plaintiff was discharged for "[f]ailure to perform job duties as assigned." *Id.* ¶ 35.

On April 30, 2018, the Plaintiff filed an EEOC charge, alleging race discrimination, retaliation, and bullying and harassment by a Caucasian female co-worker.[2] *Id.* ¶ 13. The Plaintiff then filed her complaint on October 12, 2018. Doc. 1. After being properly served, the Defendant moved to dismiss her complaint.[3] Doc. 6.

## II. DISCUSSION

### A. Motion to Dismiss Standard under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). Moreover, a "document filed *pro se* is to

---

[2] Though the Plaintiff states she filed her complaint within 180 days of receiving her right-to-sue letter from the EEOC, she attached neither a copy of the EEOC charge nor the right-to-sue letter to her complaint. Doc. 1 ¶ 2. Apparently, by not raising the issue in its motion to dismiss, the Defendant seems to assume the Plaintiff properly exhausted her administrative remedies. In any event, as the Supreme Court recently held in *Fort Bend Cty., Texas v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 2019 WL 2331306 (June 3, 2019), Title VII's charge-filing requirement is not jurisdictional—put differently, it is subject to waiver.

[3] On January 13, 2019, the Court ordered the Plaintiff to show cause why her case should not be dismissed under Federal Rule of Civil Procedure 4(m) for failure to serve the Defendant. Doc. 3. In response, the Plaintiff showed good cause for her failure to serve, and she properly served the Defendant on January 25, 2019. Doc. 4.

be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). However, even in *pro se* complaints, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993) (citations omitted).

**B.    Analysis**

Liberally construed, the Plaintiff's complaint contains three claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and under 42 U.S.C. § 1981: (1) race discrimination; (2) retaliation; and (3) hostile work environment. Title VII prohibits employers from taking certain employment actions, such as termination, based on an employee's race. *See* 42 U.S.C. § 2000e-2. Similarly, § 1981 prohibits race discrimination in the performance of contracts, including employment agreements. *See* 42 U.S.C. § 1981. Whether brought under Title VII or § 1981, the Plaintiff's claims "are subject to the same standards of proof and employ the same analytical framework."

*See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (citations omitted); *see also Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) ("We examine claims of discrimination and retaliation under the same legal framework regardless of whether the plaintiff invokes section 1981 or section 2000e.") (citations omitted). The Plaintiff may attempt to establish these claims by offering either direct or circumstantial evidence.[4] *See Jefferson*, 891 F.3d at 921. Direct evidence is "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999) (quotation marks, alterations, and citation omitted); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."). For example, courts have found direct evidence where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quotation marks and citation omitted). Under Eleventh Circuit precedent, "only the most blatant remarks, whose intent could mean nothing other than to discriminate [, retaliate or harass] on the basis of some impermissible factor constitute direct evidence of discrimination [, retaliation or hostile work environment]." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quotation marks and citations omitted). In contrast, "circumstantial evidence only

---

[4] A plaintiff may also prove her case by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks and citations omitted). As discussed below, the parties only address the burden-shifting framework under *McDonnell Douglas*.

suggests, but does not prove, a discriminatory [or retaliatory] motive, and may be evaluated under the burden-shifting test" established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jefferson*, 891 F.3d at 921-22 (quotation marks, alterations, and citations omitted).

Here, the parties do not address whether the Plaintiff has alleged facts constituting direct evidence of race discrimination, retaliation, or hostile work environment. Instead, they discuss whether the Plaintiff's allegations show circumstantial evidence of race discrimination, retaliation, or hostile work environment under the *McDonnell Douglas* burden-shifting framework. Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (citations omitted). If the plaintiff makes out her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 2121 (citation omitted). "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination [retaliation or harassment], an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination [retaliation or harassment].'" *Id.* (citation and alterations omitted).

According to the Defendant, the Plaintiff's complaint should be dismissed because she has failed to allege a *prima facie* case for race discrimination, retaliation, and hostile work environment.[5] *See generally* Doc. 6. However, that is not the proper

---

[5] To make out a *prima facie* case of discrimination, the Plaintiff may show that she (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated individual outside of her protected class. *Rice-Lamar v.*

-7-

standard at the pleading stage.[6]  As the Supreme Court made clear, pleading a *McDonnell Douglas prima facie* case is not necessary to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). That is because the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. *Id.* at 510. Thus, the correct inquiry in the context of a motion to dismiss is not whether the Plaintiff has alleged facts sufficient to make out a classic *McDonnell Douglas prima facie* case but whether the complaint provides "enough factual matter (taken as true) to suggest" discrimination, retaliation, or hostile work environment based on race. *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks and citations omitted). A complaint may not survive dismissal, however, if it consists "of only the barest of conclusory allegations without notice of factual grounds on which they purport to be based." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1271 (11th Cir. 2004) (citation omitted).

---

*City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000) (citation omitted). To establish a *prima facie* case of retaliation, the Plaintiff may show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Finally, to establish a *prima facie* case for hostile work environment, the Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected class; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under either vicarious or direct liability. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted).

[6] While citing the correct law that a "complaint need not prove a prima facie case" under *McDonnell Douglas* to survive a motion to dismiss, the Defendant—for some reason—argues otherwise. Doc. 6 at 4.

Given that the Defendant relies on the wrong standard, the Court is not inclined to rule on the motion to dismiss. Nor will the Court dismiss the complaint *sua sponte* applying the correct standard. Accepted as true and construed liberally in the light most favorable to the Plaintiff, the allegations suggest that the Plaintiff experienced discrimination, retaliation, and harassment due to her race. Whether those allegations sufficiently provide the Defendant fair notice of what the Plaintiff's claims are and the grounds upon which they rest is a separate matter that has not been argued. *Swierkiewicz*, 534 U.S. at 512. It does appear, however, that the complaint contains more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678. For example, the Plaintiff alleges she overheard her white supervisor say to another person that "black students at Wesleyan were resentful of the White and Asian students because they had more financial means. Wesleyan College should only accept students with high ability and low need." Doc. 1 ¶ 32. She also alleges that after requesting a meeting with her supervisor to discuss how her white co-worker was "bullying" her by assigning tasks, the supervisor stopped talking to the Plaintiff, even though his advice to the Plaintiff was to report to him instead of the co-worker. *Id.* ¶¶ 28-29. The supervisor also was seen on "many days" at the co-worker's office, and the two of them stopped their conversation whenever the Plaintiff walked near them. *Id.* ¶ 29. When the Plaintiff attempted to meet with her supervisor once more to address and resolve the bullying, she received instead her termination letter. *Id.* ¶¶ 34-35. In short, and absent relevant argument from the Defendant, the Court cannot say that these allegations are not sufficient to raise an inference that the Plaintiff was discriminated

against based on her race and that she was terminated for complaining about the alleged bullying.

With regard to her "bullying" allegations, though the Plaintiff does not explicate whether she was bullied due to her race or how being assigned tasks amounts to a level of objective severity, such a showing need not be made to survive a motion to dismiss. Again, the Court cannot conclude, based on the Defendant's arguments and reliance on the wrong standard, that the Plaintiff failed to provide sufficient factual content to draw a reasonable inference that she experienced racial harassment.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss (Doc. 6) is **DENIED**.

**SO ORDERED**, this 21st day of June, 2019.

        S/ Marc T. Treadwell
        MARC T. TREADWELL, JUDGE
        UNITED STATES DISTRICT COURT